# CHARLESTON.

## STATE v. LEE HASKINS et al.

Submitted January 10, 1923.      Decided January 16, 1923.

1. INDICTMENT AND INFORMATION—*Where Offenses Charged in One or More Counts Represent Continuous Transaction, or of Same General Nature, Indictment, Not Bad Because of Misjoinder.*

   If all of the offenses charged in one or more counts of an indictment represent but one continuous transaction, or are of the same general nature, the indictment is not bad because of misjoinder of counts. The rights of the accused may be protected by a motion, seasonably made, to require the state to elect on which it will rely for conviction. (p. 636).

2. STATUTES—*"Object of Act" Defined.*

   The "object" of an act, as that word is used in Sec. 30, Art. 6 of the constitution, means the matter or thing forming the groundwork of the act, which may contain many parts germane to the title, and which when traced back will lead the mind to the object as expressed in the title as the generic head. (p. 636).

3. SAME—*Title of Act Liberally and Comprehensively Construed to Give Validity as Whole if Object Contained in Act Not so Expressed in Title as to be Logically Traced as Generic Head, Such Part Void.*

   The title of an act should be construed most liberally and comprehensively in order to give validity to all parts of the act. If, however, any object is contained in the act which is not so expressed in the title and which cannot be logically traced back to the title, liberally construed, as its generic head, that part so contained is void. (p. 637).

4. SAME—*Law Relative to Larceny of Automobiles Held Unconstitutional.*

   The subject matter of sec, 92 chap. 112, Acts 1920-21, is not germane to the object expressed in the title of that act, is in contravention of sec, 30, Art, 6 of the contstitution, and therefore that section is void. (p. 640).

   (McGINNIS, JUDGE, absent).

Certified Questions from Circuit Court, Barbour County.

Lee Haskins and others were convicted of larceny.  On cer-
tified questions.

                              *Ruling affirmed.*

*E. T. England,* Attorney General and *R. Dennis Steed,* As-
sistant Attorney General, for the State.

LIVELY, JUDGE:

The questions certified arise on a challenge to the suf-
ficiency of the indictment.  A demurrer to the indictment
was overruled, a trial was had resulting in a verdict of
"guilty as charged in the indictment;" on motion the ver-
dict was set aside because of misdirection on the counts in
the indictment, the first seven of which were based on sec.
92 of chap. 112, Acts 1921, which section the court held to be
unconstitutional and void as being in contravention of sec.
30, Art. 6 of the constitution; and a new trial awarded de-
fendants on the 8th count, which charges them with having
committed grand larceny.  The court then certified the fol-
lowing questions:

"1.  Is there a misjoinder of counts in the indictment?

"2.  Was it legal to join the eighth or common law count
with the other seven founded upon the statute?

"3.  Is section 92 of chapter 112 of the Acts of the Legis-
lature of 1921 constitutional, within the provisions of sec-
tion 30 of Article 6 of the constitution?"

The first seven counts in the indictment are based on sec-
tion 92 of chapter 112, Acts 1921, which the court held to
be unconstitutional, and which is as follows:

"Sec. 92.  Whoever maliciously or without the knowledge
or consent of the owner or the person in lawful charge there-
of, or with intent to steal or deprive the owner of the use
or possession thereof, either temporarily or permanently shall
take and remove from any automobile or other motor vehicle
any part or portion thereof or any thing attached thereto or
contained therein; and whoever shall assist, aid or abet or be
present for the purpose of assisting, aiding and abetting
any person or persons in such taking and removing from any

automobile or other motor vehicle of any part or portion thereof or .anything attached thereto or contained therein, without the knowledge or consent of the owner or person in lawful charge thereof, or with the intent to deprive the owner or the person in lawful charge thereof of the use and possession thereof either temporarily or permanently; and whoever shall buy, receive or have in his possession any of such articles or any part thereof so unlawfully removed knowing them to have been taken without the knowledge or consent of the owner or person in lawful charge thereof or with intent to steal or deprive the owner or person in lawful possession thereof either temporarily or permanently of the use and possession thereof, shall, if the value of such article or articles so taken and removed be less than twenty dollars, be deemed guilty of a misdemeanor and upon conviction thereof, shall be punished with a fine of not less than one hundred dollars nor more than five hundred dollars, and with confinement in the county jail for not less than sixty days nor more than six months. If the value of such article or articles shall exceed twenty dollars, he shall be deemed guilty of a felony and shall be punished with a fine of not less than five hundred dollars nor more than five thousand dollars and with confinement in the penitentiary for not less than one year nor more than five years.''

The first four counts in the indictment charge the defendants jointly; the first of feloniously taking and removing from an automobile belonging to George L. Siers, without his knowledge or consent, six automobile tires with rims and inner tubes, of the value of $250.00; the second count makes a like charge with intent to steal; the third charges the felonious taking of the property, temporarily and· with intent to deprive the owner thereof of the use and possession thereof; the fourth is similar to the first except that it charges that the property was permanently taken; the fifth, sixth and seventh counts charge each of the defendants separately of feloniously taking and removing the said property from the owner without his knowledge or consent, and in each count one of the defendants is charged as principal, the other two

being charged with having been present feloniously aiding and abetting the principal in such felonious taking and removing. The eighth count is a common law count against the defendants jointly for grand larceny of the same property belonging to the same person and of the value of $250.00.

It will be noted that the punishment for petit larceny under said section 92 of chapter 112, Acts 1921, is a fine of not less than $100.00 nor more than $500.00, and with confinement in the county jail for not less than sixty days nor more than six months; whereas the punishment for petit larceny under section 14 of chapter 145 of the Code is confinement in jail not exceeding one year; that the punishment under said section 92 for stealing or carrying away property the value of which exceeds $20.00 is a fine of not less than $500.00 nor more than $5,000.00, and with confinement in the penitentiary for not less than one year nor more than five years; whereas, the punishment for grand larceny under said section 14 of chapter 145, Code, is confinement in the penitentiary not less than two nor more than ten years. There is quite a difference in the punishment for petit or grand larceny of the property designated in said section 92 from the punishment of petit or grand larceny of all other kinds of property under the general statute.

It seems that it would not be necessary to consider and answer certified questions 1 and 2 if it be held that section 92 is unconstitutional, for if it be so, the counts based thereon would fall, and would be treated as mere surplusage. But it may be well, for other reasons, to consider and answer them.

The first seven counts charge the different ways in which parts of the automobile may be taken under the statute, each of which is an offense as therein defined, and are designed to meet the evidence which might develop on the trial. The fifth, sixth and seventh counts each charges one of the defendants of the offenses prescribed in the section, and also charges the other two with being present and aiding and abetting in the commission of the offense. A count may contain a charge of larceny against a principal and also a charge

against another as accessory before the fact. See section 8 of chapter 152 of the Code, which says that any such accessory before the fact may be indicted together with such principal or separately. .*State* v. *Roberts,* 50 W. Va. 422; *Hawley* v. *Commonwealth,* 75 Va. 847. These counts being for the same offense and for the purpose of meeting the various phases which the evidence might develop, and which, if sustained, would entail the same punishment, there is clearly no misjoinder as to them. Does the addition of the 8th count, the common law count for grand larceny, make a misjoinder? It may be observed that this count is for the same offense as that charged in the first seven counts, that is, the felonious stealing, taking and carrying away the six automobile tires, five of the same being practically new and one being old, together with rims and inner tubes, of the value of $250.00, or more, the goods and chattels of George L. Siers.

The general rule is that if all of the offenses charged in one or more counts of the indictment represent one continuous transaction, they may be joined as distinct offenses, and unless they appear on the face of the indictment to involve a different transaction a motion to quash for misjoinder should be overruled. *State* v. *Ringer,* 84 W. Va. 546; *State* v. *Miller,* 89 W. Va. 84. A joinder of two or more offenses of the same general nature in an indictment is not ground for demurrer. *State* v. *Jarrell,* 76 W. Va. 263. In order to protect himself on the trial under such an indictment the accused may require an election by the state as to which of the alleged offenses it will rely upon for conviction. Offenses of the same nature may be joined though they differ in degree. *Lazier* v. *Commonwealth,* 10 Grat. 708. "Where two or more distinct felonies are contained in the same indictment, it may be quashed, or the prosecutor compelled to elect on which charge he will proceed, but the indictment will not be quashed or set aside on demurrer where several counts are introduced solely for the purpose of meeting the evidence as it may transpire, the charges being substantially for the same offense, or for cognate offenses; though when the offenses de-

velop in the evidence are distinct, the prosecution, as will presently be, seen, will be compelled before verdict to elect that on which it relies.'' Whar, Crim. Pro. Vol. 1, p. 388. When the offenses are cognate and are charged in the same indictment it matters not that the several counts are of different grades and call for different punishments. *Hawley* v. *People,* 75 N. Y. 496. And under the United States Revised Statutes, separate offenses of the same class growing out of the same transaction may be united in the same indictment. *U. S.* v. *Jones,* 69 Fed. 973; *Anderson* v. *Moyer,* 193 Fed. 499. Counts for offenses of the same nature at common law and under a statute may be joined. *State* v. *Thompson,* (S. C.) 47 Am. Dec. 588; 9 L. R. A. 184 (note).

The counts in the indictment all being for the same offense and meant to meet only the various aspects which the evidence may present, it is reasonably clear that there is no misjoinder; and we so answer the first two questions certified.

Is section 92 unconstitutional and void because it contravenes section 30 of Art. 6 of the constitution which reads: ''No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, * * *'' All of the states have similar constitutional provisions, and they have been held to be mandatory except in Ohio. *Simms* v. *Sawyers,* 85 W. Va. 245. ''Whatever may be the scope of an act, it can embrace but one subject, and all its provisions must relate to that subject; they must be parts of it, incident to it or in some reasonable sense auxiliary to the object in view. That subject must be expressed in the title to the act. The constitutional requirement is addressed to the subject, not to the details of the act.'' Lewis Suth, Stat, Constr. sec. 118.

If under the one object expressed in the title other incidental or auxiliary objects appear in the act germane, to the principal object, the act is valid as to such incidental auxiliary and germane objects. The universal rule of construc-

tion is that the title should be construed in its most comprehensive and liberal sense favorable to the validity of any provision of the act; but where it is very clear that any provision of the act is not within the title, liberally construed, that particular provision of the act should be held invalid. *State* v. *Mines*, 38 W. Va. 125, 36 Cyc. p. 1017.

It is the duty of the courts to uphold the legislative acts, and every presumption is to be made in favor of the constitutionality of a statute, and it should not be declared unconstitutional except when it is plainly so. And if the court be in doubt as to its constitutionality, that doubt must be resolved in favor of its validity. *Booten* v. *Pinson*, 77 W. Va. 412; *Sutherland* v. *Miller*, 79 W. Va. 796; *Cunningham* v. *Cokely*, 79 W. Va. 60; *State* v. *County Court*, 60 W. Va. 339. On the other hand, the courts should preserve unimpaired the organic law in all its parts and they cannot disregard a plain mandate of the constitution directed against surreptitious legislation. It is a paramount duty, accentuated by the oath of all officials, to support the constitution. "All that can reasonably be required is, that the title shall not be made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." *Blair* v. *Chicago*, 201 U. S. 400, 452.

If the constitutional provision has been disregarded, in the passage of a law, it cannot be sustained. Lewis Suth Stat. Cons. sec. 82, 92.

Bearing in mind these principles we come to the consideration of the third certified question: "Is section 92 of chapter 112 of the Acts of the Legislature of 1921 constitutional, within the provisions of section 30 of Article 6 of the constitution?" The title to the act is as follows: "An Act providing for the co-operation of the state and federal governments in the construction and maintenance of public roads; creating a state road commission and defining the terms of office, salaries, qualifications, powers and duties of its members; providing for assistance and employees of such commission, and defining their powers and duties; providing

for the establishment of a state road system connecting at least the various county seats of the state, and with the leading highways of adjacent states; providing for the taking over by the commission from counties, towns and cities (having a population of less than twenty-five hundred persons) of roads and routes constituting a part of the state road system, and relieving such political sub-divisions of any further obligations· and expense to improve and maintain the same, and from further authority over them; providing for the purchase or condemnation by the commission of private roads and bridges, lands, rights, ways, and property necessary for road construction and maintenance, to make compensation therefor and the procedure therein; granting to the commission the power to make and enforce rules and regulations governing traffic on and the use of state roads, and to prescribe penalties for the violation of such rules and regulations and for the violation of other provisions of this act; providing for the employment of state convicts and county prisoners on the public roads and elsewhere; providing a code of laws for the government and use of public roads by motor and other vehicles; regulating the powers and duties of electric and other railways at crossings of the public roads, and along the lines thereof, and the duties and liabilities of persons, firms and corporations excavating in, near or under public roads; providing a method of accounting for counties; providing for the construction, maintenance and repair of public roads, classifying and defining public roads, and providing for the construction, repair and maintenance of county-district roads by the counties; creating the office of county road engineer and other offices and defining the powers and duties of such officers; providing methods for raising the necessary revenues by counties and districts for the contruction and improvement of county-district roads; granting to counties the power to condemn and take lands, rights and ways for road purposes; regulating the power of the commission over bridges on county-district roads, and defining the duties of the commission to render assistance to counties in specified matters; providing for the repeal of

certain acts relating to public roads, and all acts and parts of acts inconsistent herewith, and for other purposes.''

The one general object of this legislation is to put in one comprehensive statute, a complete system of laws governing the construction, reconstruction, maintenance and repair of all public roads, ways and bridges, and the regulation of traffic thereon. Sec. 92 of the act is hereinbefore quoted.

What connection of relevancy the purposes of this section have to the principal object of the bill as expressed in the title or as disclosed by the other provisions of the act we fail to perceive. It is not auxiliary or germane to the construction, reconstruction, maintenance or repair of public roads, ways and bridges or to the regulation of traffic thereon, or for the regulation of the use of public roads by motor or other vehicles. It is a penal statute to prevent larceny of any part or portion of an automobile or other motor vehicle, or anything attached thereto or contained therein, wherever the automobile might be found, or wherever used. It cannot be considered, with any plausibility, as incidental to the regulation of the use of public roads by motor or other vehicles. It is true there is an intimate connection between automobiles and public roads, the former usually but not always being used upon the latter; but the offense and punishment is not confined to malicious and unlawful asportation of the property while being used or found on the roads. Wagons, and other vehicles not self propelled, riding horses, teams and the like also have an intimate relation to roads, and their movements and operations thereon are regulated by ''the law of the road'', the rules of traffic, and are of equal dignity with self propelled vehicles. If this section is germane to the object of the act, then a like provision for stealing, or removing from the owner's possession and against his will, either permanently or temporarily, a horse, or a saddle off of his back, or any part of a wagon, buggy, or the contents of either wherever found, would also be germane because they are used on the road and subject to traffic regulations while being used thereon. A most liberal construction of the object of the act as expressed in the title would not render valid

a general code of criminal laws for the trial and punishment of theft of property which might be used upon or transported over the public roads. Roads are so intimately connected with the life of a civilized people that almost every known article of barter and trade is at some time in its existence found in transportation upon them. Self propelled vehicles are those which use gasoline, electricity or steam as motive power, and by the same process of reasoning the title of the act could be extended to include punishment for unlawfully taking or tampering with these sources of motive power. But it is suggested that the intention of the section is to confine the offense to the larceny of parts of an automobile and its contents while on the public road, and considered as a protection to traffic and the machine in which it is being transported, it might fall within a code of laws for the use of public roads by motor and other vehicles. However, it will be observed that the section does not confine the offense to automobiles and their contents while found or operated on the roads. Under its plain provisions, the taking of any part of an automobile or other motor vehicle or anything attached thereto or contained therein, maliciously or without the knowledge or consent of the owner or person in lawful charge thereof, with intent to steal or deprive the owner of the use or possession thereof either temporarily or permanently, is subject to the punishment, wherever the property may be, whether the vehicle is licensed, or operated, whether in a dealer's ware room for sale, being transported to him, or whether in the garage or other building of the owner. The terms are plain. Being a criminal act, it must be strictly construed in favor of the accused. Nor does an inspection of the context, or of the act justify a different construction. If it should be held that the section applied to the taking while the car and its contents were on the public road, then the first seven counts in the declaration would be defective for not having so charged the taking. The attorney general argues that the section is constitutional under the authority of *State ex rel.* v. *Thompson,* 80 W. Va. 698, where it was provided that certain persons, when sentenced to pay

a fine or to confinement in jail, should be required by the judge or justice, in pronouncing the sentence, to labor on the public roads during the . term of imprisonment, or for payment of the fine; and the court upheld that provision of the act, as falling within the main purposes of the act, namely, establishment, classification, construction and maintenance of roads. Labor is necessary to maintenance of the roads. But punishment for stealing the parts or contents of a motor vehicle is not necessary for the construction or maintenance of roads. The section provides for fines, but these fines cannot go to the road fund. The net proceeds of all fines acccruing to the state under the laws of the state must go to the support of free schools. Sec. 5 Art. 12 Const. *State* v. *Parkins,* 63 W. Va. 385. It is argued that inasmuch as the license fees for the operation of automobiles over the public roads, go into the state road fund for the construction and maintenance of roads, the section was designed to protect the motor vehicles by use of which traffic is largely carried on, so that they might be at all times available for that purpose, thus encouraging the purchase and ownership of such vehicles, from the use of which revenue for the roads is obtained. The argument is that more cars, bring in more revenue. By the same process of reasoning, any legislation which would tend to cheapen the price of cars and their use, would fall within the purview of the title to the act, such as a provision for punishment of the theft of gasoline wherever found. It would be rather a strained construction to hold that the section is a revenue measure for the maintenance of roads. We must give the constitutional provision a reasonable construction and effect. We cannot see that the section is germane or incidental to the construction or maintenance of roads or to the regulation of the use of public roads by motor or other vehicles. It will be observed that the title includes to the commission power to make and enforce rules and regulations governing traffic on, and the use of state roads, and to prescribe penalties for the violation of the same, "and for the violation of other provisions of this Act." There are many provisions for which

penalties are prescribed, such as operating a car without license, or proper equipment of brakes, lights and the like; operating a car on the roads while under the influence of liquor, etc.    This provision considered as justifying the infliction of penalties for offenses which do not fall within a liberal construction of the main object of the act, falls within the condemnation of the principle commented upon by Judge POFFENBARGER in *Stewart* v. *Tennant*, 52 W. Va. 559, 571, namely, that a special act written under a title which is general, operates as a concealment of the real nature of the act, and a misleading of the public, citing Suth. Stat. Con. sec. 90.

Somewhat applicable to the question under consideration is the case of *Walker* v. *State*, 49 Ala. 329.    In that case the title to the act was, "An Act to restrain the sale of personal property in certain cases," and a provision in the act declared the wilful destruction of personal property on which there was an unsatisfied mortgage or lien, by the person destroying it, was punishable as a misdemeanor; and it was held that this criminal provision was foreign to the object expressed in the title, and was, consequently, null and void; but that the other provisions of the act being separable from it were not affected by its invalidity.    The court said that the provisions of the statute had no relation to a sale of personal property, although it might have some incidental effect thereon, but held that the provision was wholly foreign to the object expressed in the title, and had no proper relation to it, and that it could not be sustained without departing from the letter, spirit and policy of the constitution.

In *Commonwealth* v. *Densmore*, 29 Pa. Co. Ct. Rep. 217, the title of the act provided for the licensing of "operators" of automobiles; the provision in the act was for the licensing of "owners," and the court held that the title was misleading.    The defendant was convicted under a count charging him with operating an automobile without a license, and the court held that the provisions requiring owners of automobiles to take out such license was obscure as the title pro-

vided for licensing operators. The motion in arrest of judgment was sustained, and the prisoner discharged.

In *State* v. *Great Western Coffee & Tea Co.,* 171 Mo. 634, the title to the act was, "To prevent the use of unhealthy chemicals in the manufacture of any article used or to be used in the preparation of food," and a portion of the act prohibited the sale of such articles. The defendant was found guilty of selling baking powder which contained alum, but the court set aside the conviction because the provision of the act providing punishment for any person or corporation that sold or offered for sale such article was not constitutional because there was nothing about selling it "clearly expressed in the title."

In *State* v. *City of St. Louis,* 61 S. W. 658, the ordinance was entitled, "An ordinance authorizing, directing and empowering the board of public improvements to erect and maintain, at suitable locations on the streets, boxes or receptacles for the collection of litter, and to contract with B, or assigns, to erect said boxes or receptacles without cost to the city," and the act provided that in consideration of the erection of said boxes by B he was to be granted the exclusive privilege of posting advertisements thereon, without which privilege the contract would be worthless. Held, that the ordinance was void, as not expressing the object in the title.

In *Failing* v. *Commissioner,* 53 Barb. (N. Y.) 70, the title of the act was, "An act to regulate a road in the town of Palatine in the county of Montgomery. The words in the statute were, "To alter and reduce the width," and the act was held to be unconstitutional, the judge observing in the opinion that "The body of the bill expresses its object. The title of the bill disguises and conceals it. No person from reading its title would ever guess at its object."

Many cases of like import could be cited from which it may be gleaned that a general title cannot be used to conceal legislation incongruous in itself, or which by no fair intendment can be considered as having a necessary or proper connection with the title. If parts of the act, are not so cor-

related to the object expressed in the title as to appear to follow as a natural and legitimate complement, they cannot stand. *Ballentyne* v. *Wickersham,* 75 Ala. 533; *Lynch* v. *Murphy,* 119 Mo. 163; *State* v. *Yardley,* 95 Tenn. 546; *Macon R. R. Co.* v. *Gibson,* 85 Ga. 1; *Fidelity Ins. Co.* v. *Shenandoah R. R. Co.,* 86 Va. 1; *Allen* v. *Pioneer Press Co.,* 40 Minn. 117; *Neuendorff* v. *Duryea,* 69 N. Y. 577.

Under the well established principles enunciated, we are constrained to hold that said section 92 of chapter 112 of the acts of 1921, is in contravention of section 30, Article 6 of the Constitution, and is null and void; and so answer the third question certified.

*Ruling affirmed.*