STATE *ex rel.* J. HOWARD MYERS

*v.*

THE HONORABLE GEORGE W. WOOD, *Judge, etc., et al.*

(No. 12937)

Submitted May 27, 1970.          Decided July 17, 1970.

Dissenting Opinion July 22, 1970.

432

*Jackson, Kelly, Holt & O'Farrell, Homer A. Holt, John L. McClaugherty, Forrest H. Roles,* for relator.

*Leo Catsonis,* Special Prosecuting Attorney, for respondents.

BERRY, JUDGE:

This is a proceeding in prohibition instituted under the original jurisdiction of this Court by the State of West Virginia, at the relation of J. Howard Myers, hereinafter referred to as petitioner, to prohibit the Honorable George W. Wood, Judge of the Intermediate Court of Kanawha County, West Virginia, and the Honorable Patrick Casey, Prosecuting Attorney of Kanawha County, West Virginia, from proceeding further to try J. Howard Myers on six indictments returned against him and others for conspiracy to affect the market and price and supply of commodities and printing obtained and to be obtained by the State of West Virginia, under the provisions of Article 3, Chapter 5A, of the Code of West Virginia, as amended. A rule to show cause was issued against

the respondents on March 9, 1970, returnable May 5, 1970, which return date was continued until May 26, 1970, on motion of the respondents. The case was submitted for decision on arguments and briefs.

The indictments against the petitioner were returned by the grand jury of the Intermediate Court of Kanawha County at the September, 1969, Term of that Court. All six of the indictments involved in this proceeding charging the petitioner with a felony for conspiracy with others are drawn under Section 38, Article 3, Chapter 5A, of the Code of West Virginia, as amended. The respondents filed an answer to the petition, and the petitioner filed a general and special replication and demurrer to the respondents' answer.

The basic issue involved here is whether the respondents have jurisdiction to try the petitioner under the six indictments.

It is contended by the petitioner that the statute in question (Code 5A-3-38, as amended), under which the indictments are drawn, is void, unenforceable and unconstitutional for the following reasons: (1) The title of the Act containing the section under which the indictments are drawn does not indicate that it contains criminal provisions and therefore violates Article VI, Section 30, of the Constitution of West Virginia; (2) the statute, Code, 5A-3-38, as amended, under which the indictments are drawn, does not define the offense so as to plainly and fully inform the accused of the charge against him, in violation of the due process clauses of both the Federal and State Constitutions, which in the West Virginia Constitution is Article III, Section 10, and also in violation of Section 14 of Article III of the Constitution of West Virginia; (3) the statute is vague and indefinite and does not distinguish between criminal and innocent conduct and therefore violates the due process clauses of the two Constitutions; and (4) the statute is confusing in that Section 36 of the Act provides for misdemeanors in connection with all violations of the Act, except for Section 35 which has a different penalty from that provided for in Section 36, and that Section 38 provides for a felony penalty, all of which makes the statute confusing and

indefinite and in violation of due process of law. Section 38 attempts to create a criminal conspiracy offense and reads as follows:

> "It shall be unlawful or any person to jointly combine or collude or conspire in any way to affect the market, or price, or supply of commodities and printing obtained or to be obtained by the State under the provisions of this article, and upon violation thereof such person shall be guilty of a felony, and, upon conviction therefor, shall be confined in the penitentiary not less than one year nor more than five years, and be fined not exceeding one thousand dollars."

Section 36 of the same Act is in the following language:

> "A person who violates a provision of this article other than the provisions of section thirty-five [§ 5A-3-35] shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than ten days nor more than one year, or fined not less than ten nor more than five hundred dollars, or both, in the discretion of the court."

It is contended that the above-quoted two sections of the same Act are contradictory, and that since Section 36 does not exempt Section 38 as it does Section 35, it cannot be clearly ascertained which class of crime and punishment is provided.

Article VI, Section 30, of the Constitution of West Virginia provides that:

> "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature

shall by a vote of two-thirds of the members elected to each house, taken by yeas and nays, otherwise direct."

Therefore, the title of the Act in question must be measured against the above provisions of the Constitution to ascertain if the title encompasses the object contained in Section 38 of the Act in question. The Act in question is Chapter 132, Acts of the Legislature, Regular Session, 1961, to which the title reads as follows:

"AN ACT to repeal articles five and eight, chapter five; section ten, article nine, chapter six; section ten-a, article one, chapter twenty-five; chapter twenty-five-a; and articles eight and eleven, chapter twenty-nine of the code of West Virginia, one thousand nine hundred thirty-one, as amended; and to amend said code by adding thereto a new chapter, designated chapter five-a, all relating to the administration and financial affairs of the state and to the department of finance and administration, its powers and duties."

It will be noted that all former parts of the Code of West Virginia relating in any way to the matters contained in the new Chapter of the Code, designated as Chapter 5A by said Act, were repealed and not reenacted. Chapter 132 of the Acts of the Legislature, Regular Session, 1961, amended the Code by placing a new chapter designated as 5A, and the general object of the new chapter was to provide a plan for the administration and fiscal affairs of the state. Article 3 pertains to the purchasing division which was charged with the responsibility of making purchases of goods and commodities for the use of the state. After the legislature set up the procedures, several sections were placed at the end of the Article in an attempt to prevent the defrauding of the state by means such as conflict of interest, false pretenses, delivery of inferior commodities, and included there the conspiracy section, 38, which might be termed the statute against "rigging" prices and supplies or market of goods being purchased by the state.

It can be readily seen from the quoted sections relating to criminal offenses that the statute in question involved in this

proceeding, Code, 5A-3-38, as amended, was ineptly and carelessly drawn. However, there is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to not be guilty of the offense. 62 HARVARD LAW REVIEW, page 76.

It would appear that the statute in question under which the indictments involved in this case were drawn is not too vague to fully and plainly inform or notify a person that he will be guilty of violating the provisions of the statute if he is a party to or combines with anyone to affect or "rig" the price of any commodities obtained by the state, and, furthermore, if it is necessary to obtain any detailed information with regard to the offense charged a bill of particulars can be requested. *Keister's Ex'rs v. Philips' Ex'x.*, 124 Va. 585, 98 S.E. 674; *State v. Nuckols*, 152 W.Va. 736, 166 S.E.2d 3.

All that is necessary to create a valid statutory offense is for the statute to define or specify the acts necessary to constitute the offense in order to enable a person to know when he performs an act whether it is forbidden by the statute, and a valid statute may be couched in general language. *State v. Harrison*, 130 W.Va. 246, 43 S.E.2d 214.

The fact that Section 36 provides for misdemeanors in violation of any portion of the Act, except Section 35, and that Section 38 specifically provides for a felony penalty does not violate the due process clauses of the State and Federal Constitutions. It has been held that the specific section of the statute controls over a general section of the statute. *State v. Runnion*, 122 W.Va. 134, 7 S.E.2d 648. A felony is also provided for fraud by Section 37, indicating that the legislature intended to make certain crimes more than misdemeanors. It would also appear that the statute only intended to make it a crime to affect or "rig" the price as well as the market and supply of commodities obtained by the state to the detriment of the state, and not for its benefit. Therefore, no innocent conduct of any party which would in any way benefit the

state would be within the purview of the statute. See *State ex rel. Waller Chemicals, Inc. v. McNutt,* 152 W.Va. 186, 160 S.E.2d 170.

It is a well-settled principle that courts do not generally pass on the constitutionality of challenged statutes unless that question is necessary to the decision of the case. *Edgell v. Conaway,* 24 W.Va. 747; *State v. McCoy,* 91 W.Va. 262, 111 S.E. 125; *State v. Harrison,* 130 W.Va. 246, 43 S.E.2d 214. The reason for the application of this principle will clearly appear in the disposition of the point raised with regard to the title of the Act in which the section is contained. Notwithstanding the disposition of the petitioner's contention in the instant case with regard to the constitutionality of the statute in question being violative of the due process clauses of the State and Federal Constitutions, the language of such statute should be more precise and in greater detail in order to eliminate the possibility of finding such statute unconstitutional.

The petitioner's contention that the section in question is unconstitutional because the title to the Act in which the section is contained does not refer in any manner to a criminal offense or the provisions of a penalty in connection with the matters encompassed in the Act, is the major question to be resolved in the disposition of this case. This is in effect admitted in the briefs of both parties, and is indeed a serious matter.

The title to the Act in question, Chapter 132, Acts of the Legislature, Regular Session, 1961, after repealing certain acts or parts thereof and amending and adding a new chapter designated as Chapter 5A, merely states: "* * * all relating to the administration and financial affairs of the state and to the department of finance and administration, its powers and duties." There is no reference or indication whatsoever that the Act purported or intended to establish any criminal offense, or to provide a penalty for any criminal offense in connection with the provisions of the Act, all of which, from the contents of the title, dealt only with civil matters. Section 30 of Article VI of the Constitution of West Virginia, heretofore quoted in full, requires that no Act shall embrace more

than one object which must be expressed in the title, and if any object is contained in the Act which is not expressed in the title, that portion of the Act shall be void. This provision of the constitution has been considered on many occasions by this Court, and it has been uniformly held that if any object in an Act is not contained in the title when it is passed by the legislature the Act or part of an Act in which such object is contained is unconstitutional in that it violates Section 30, Article VI, of the State Constitution. *State v. Haskins,* 92 W. Va. 632, 115 S.E. 720; *Prager v. W. H. Chapman & Sons Co.,* 122 W.Va. 428, 9 S.E.2d 880, 129 A.L.R. 1114; *Bedford Corporation v. Price,* 112 W.Va. 674, 166 S.E. 380; *Elliott v. Hudson,* 117 W.Va. 345, 185 S.E. 465. In the case of *State v. Haskins, supra,* the title to the Act indicated the object was a compilation of laws governing the construction, reconstruction and maintenance and repair of all public roads and the regulation of traffic thereon. A section in the Act provided for the larceny of motor vehicles or any part thereof and a penalty therefor. It was held by this Court that the penal statute was not germane to the provisions of the title, and that a penal statute could not be considered as incidental to the regulations of the use of public roads by motor vehicles.

In the case of *Prager v. Chapman, supra,* the title to the Act involved in that case indicated that the object related to the Workmen's Compensation Law and the administration thereof. One of the sections of the Act purported to withhold certain defenses in actions at law from employers who did not subscribe to the Workmen's Compensation Fund, which would in effect create a new ground of action for personal injury or wrongful death. It was held by this Court that there was no indication in the title that a cause of action outside the Act was to be created thereby, and that the section of the Act attempting to create a new cause of action was unconstitutional. The first point of the syllabus in the *Prager* case reads as follows:

> "The title of an act of the Legislature which amends specified sections of the Workmen's Compensation Law '* * * all relating to workmen's compensation and the administration of the workmen's

compensation law' is not sufficient, under Constitution, Art. VI, Sec. 30, to sustain a provision in the act under which non-casual employers are made liable in an action at law for the injury or death of an employee, not occasioned by the wrongful act, neglect or default of the employer."

In the case of *Elliott v. Hudson, supra,* involving the extraordinary proceeding in prohibition instituted in this Court under its original jurisdiction, the same procedure as in the case at bar, the writ was granted holding a section of an Act unconstitutional which provided that the operation of a motor vehicle on the highways of this state by a nonresident automatically appointed the state road commissioner as the nonresident attorney upon whom process could be served for any damage occurring by the operation of the motor vehicle by the nonresident. The title merely provided for the operation of motor vehicles upon highways and the financial responsibility of owners or operators of motor vehicles for damages caused by such operation. It was held by this Court in the syllabus of that case that:

"Section 15 of chapter 61 of the Acts of the Legislature of 1935, providing for service of process upon the state road commissioner as attorney for nonresident persons who, while using the highways of this state, cause damage to others in their persons or property, embraces a matter not stated in the title of said act, nor germane to the matters stated in the title, and is therefore unconstitutional and void because violative of section 30, article 6 of the Constitution of West Virginia, which provides that no legislative act 'shall embrace more than one object, and that shall be expressed in the title.' "

The courts in this and other states are strict in their decisions involving criminal matters or penalties with regard to requiring the object of the Act to be contained in the title in order to advise the public of the intention of an act passed by the legislature. About the only exceptions are acts dealing with the state control of alcoholic liquors where the act has in the title a statement that the purpose is to control such matters. In this type of case it has been held that the word

"control" is synonymous with regulation and gives the authority to regulate the manufacture of intoxicating liquors, that the word "control" in the title is very comprehensive and that any provision in the act with regard to the regulation, restraint or inhibition against use of the subject matter is germane and does not violate section 30, Article VI, of the Constitution of West Virginia. *Boyles v. County Court of Barbour County et al.*, 116 W.Va. 689, 182 S.E. 868. See *State v. Jaranko*, 142 W.Va. 1, 93 S.E.2d 537. Also, where an act revises, arranges and consolidates the whole statutory law of the state, a statement to that effect in the title of the act is sufficient. *State v. Voiers*, 134 W.Va. 690, 61 S.E.2d 521.

The case of *State v. Nickelson*, (Iowa), 169 N.W.2d 832, is a case decided by the Supreme Court of Iowa in 1969, and is almost identical in all respects to the case before us here. The provisions in the State Constitution of Iowa with regard to a title to an act are practically the same as the provisions in the West Virginia Constitution. Article III, section 29, of the Constitution of Iowa appears in the following language:

> "Every act shall embrace but one subject, and matters properly connected therewith; *which subject shall be expressed in the title.* But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." (Emphasis added.)

The Legislature of the State of Iowa enacted the Uniform Commercial Code which contained provisions for certain criminal offenses. The Act in question repealed certain previous Acts and enacted the Uniform Commercial Code which contained all the matters relating to commercial transactions. The title of the Act passed by the Iowa Legislature provides the following:

> "AN ACT to be known as the Uniform Commercial Code, relating to certain commercial transactions in or regarding personal property and contracts and other documents concerning them, including sales,

commercial paper, bank deposits and collections, letters of credit, bulk transfers, warehouse receipts, bills of lading, other documents of title, investment securities, and secured transactions, including certain sales of accounts, chattel paper, and contract rights; providing for public notice to third parties in certain circumstances; regulating procedure, evidence and damages in certain court actions involving such transactions, contracts or documents; to make uniform the law with respect thereto; and repealing inconsistent legislation."

The title did not contain any reference to any criminal penalty for violations of any sections thereof. It was held in the *State v. Nickelson, supra,* case that:

"The title of the Act before us is silent as to any act that is prohibited or that might lead to criminal prosecution. In that particular it fails to meet constitutional requirements. Not even the presumptions in favor of constitutionality in which we indulge are enough to show where the subject of section 710.12, Code of 1966 is 'expressed in the title' of the Act as passed by the legislature."

It is contended by the respondents that one can look at the former acts of the legislature and examine them in connection with the title of the present Act, which incorporated some of the provisions of the former acts, and by such examination transfer former title statments to the present Act to meet the constitutional requirements of having the object of the Act in the title. This may be true where an act amends the code and reenacts former acts. *State v. Furr,* 101 W.Va. 178, 132 S.E. 504. However, if the former acts are repealed and not reenacted, it is improper to look back to the repealed acts that no longer exist in order to read something into the title of the new act. *Shields and Preston v. Bennett, Auditor,* 8 W.Va. 74. It was held in the third point of the syllabus of the *Shields* case that: "The question, whether the object of an act is expressed in the title, is determined by comparison of the act and the title, and is not influenced by any former law which the latter act, if valid, expressly or by implication, repeals." The Act in question, as heretofore stated, clearly repeals all

former acts and amends the code by enacting an entirely new chapter which contains the section in question.

It therefore appears, under the provisions of Section 30, Article VI, of the Constitution of this state and the authorities pertaining thereto, that by virtue of the fact no mention of any kind is made in the title to the Act, which contains the section involved herein, with regard to any crime or penalty contained in the Act, Section 38 of the Act under which the indictments are drawn in the instant case is unconstitutional.

There is no question but that there was a common law crime of criminal conspiracy. 15A C.J.S., *Conspiracy*, § 34; BISHOP ON CRIMINAL LAW, Ninth Edition, Vol. 2, § 176. Therefore, if the statute in question is unconstitutional it is void and of no effect, but if the acts alleged to have been committed come within the definition of common law conspiracy, offenses under the common law would be in existence in this state by virtue of the constitution and statute. Section 21, Article VIII, of the Constitution of West Virginia; Code, 2-1-1.

Criminal conspiracy is a separate and distinct offense from any principal offense contemplated or committed by conspirators and is a combination between two or more persons to accomplish, by concerted action, either a criminal or unlawful purpose, or a lawful purpose by criminal means. 15A C.J.S., *Conspiracy*, §§ 35, 47. While we are not concerned with it here, the other type of conspiracy is "civil" which generally relates to a combination to commit a tort, thus increasing the damages. 15A C.J.S., *Conspiracy*, § 1. BISHOP ON CRIMINAL LAW, Ninth Edition, Volume 2, § 163, points out that among "Cheats at Common Law" was the fraudulently taking advantage of a public trust and thus affecting public revenues, which could be done by one person; and, of course, pratically all schemes to defraud the government or impair its functioning or lessen its revenue in any manner where two or more persons engage in such schemes would constitute criminal conspiracy at common law. BISHOP ON CRIMINAL LAW, Ninth Edition, § 219. Criminal conspiracies are sometimes referred to as "indictable conspiracies." 15A C.J.S., *Conspiracy*, § 46.

Common law conspiracy is a misdemeanor, being related to an attempt. *Commonwealth v. Lopes,* 318 Mass. 453, 61 N.E.2d 849; BISHOP ON CRIMINAL LAW, Ninth Edition, Volume 2, §§ 169, 240.1. However, the six indictments in the case at bar could not in any event be held good under common law conspiracy because all six charge a felony to have been committed within ten years of the return date of the indictments which is within the effective date of the statute. The statute of limitations for misdemeanors in this state is one year, Code, 61-11-9, and such indictments for misdemeanors must state that the offense was committed within the statutory period. *State v. Bruce,* 26 W.Va. 153.

For the reasons stated herein it appears that the Intermediate Court of Kanawha County does not have jurisdiction to proceed with the trial of the petitioner under the six indictments returned by the grand jury of the Intermediate Court of Kanawha County, by virtue of the fact that all of the indictments are based on an unconstitutional statute, and the writ of prohibition lies as a matter of right in such case. Code, 53-1-1; *State ex rel. Heck's Discount Centers, Inc. v. Winters,* 147 W.Va. 861, 132 S.E.2d 374.

Therefore, the writ prayed for is granted.

*Writ granted.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent from the decision in this case. It is my view that the Court, without any clear legal duty to do so, but with devastating and far-reaching consequences, has needlessly invalidated the six felony indictments involved in this case.

Our clear legal duty to uphold constitutionality of statutes was recently reiterated in the second point of the syllabus of *State ex rel. Metz v. Bailey,* 152 W.Va. 53, 159 S.E.2d 673, as follows:

"When the constitutionality of a statute is challenged, every reasonable construction must be

resorted to by the courts to sustain its validity and any reasonable doubt must be resolved in favor of the constitutionality of the legislative act in question."

Constitutions of various states contain provisions similar to that involved in this case relating to the requirement that the subject or object of a legislative act be stated in the title of the act. The general rule regarding the duty of courts in construing and applying such constitutional provisions is stated in 50 AM. JUR., *Statutes*, Section 168, pages 147-49, as follows:

"A constitutional provision requiring the subject or object of a statute to be stated in the title, should not be construed strictly, narrowly, hypercritically, or technically, but should be construed reasonably, fairly, justly, and even liberally construed, due regard being had, not only to its letter, but also to its spirit. The constitutional provision should not be so interpreted as to render it oppressive or impracticable, or to obstruct, hamper, or cripple legislation, or to promote controversy in regard to the validity of legislative enactments. On the other hand, the construction should not be so liberal as to render the constitutional provision nugatory."

Similar legal principles are stated in 50 AM. JUR., *Statutes*, Section 173, pages 153-156, as follows:

"The general rule is that a statute will be upheld, as against a claim that it is in violation of a constitutional provision requiring the subject or object of the act to be expressed in the title, where there is a substantial compliance with the constitutional requirement. The title of a statute will generally be regarded as sufficient, not only where the subject or object of the act is clearly disclosed by the title, but also where it fairly or reasonably expresses, embraces, or indicates the general subject or object, is directly or indirectly related, germane, cognate, incidental, auxiliary, or subservient thereto, and has a proper, fair, reasonable, consistent, natural, or necessary connection therewith, so that the subject matter of the statute is not foreign to that expressed in the title, and may be easily determined, or readily inferred, therefrom. Indeed, for a law to be valid, its subject or object must not be foreign to the title, but must be so expressed in its title as to give a reasonable or

fair notice, suggestion, or indication thereof. If the provisions of the act itself cannot be fairly construed as embraced within the title of the act, then it is in conflict with the Constitution."

The compliance by this Court with general principles stated above was expressed in the fourth, fifth and sixth points of the syllabus of the early case of *Shields and Preston v. Bennett*, 8 W.Va. 74, as follows:

"The most liberal construction, favorable to the validity of legislation, which the language of these provisions admits, should be adopted.

"When the principal object of an act is expressed in the title, and the act embraces, with such principal object, other auxiliary objects, the act, if not otherwise objectionable, is valid, not only as to the principal, but likewise as to the auxiliary objects.

"Generally, the language of a title should be construed in its most comprehensive sense."

The salutary, sensible rule of constitutional law stated above in relation to Article VI, Section 30, of the Constitution of West Virginia, and its simple requirement that no act of the legislature shall embrace more than one object, which shall be expressed in the title of the act, has been expressed, reiterated and applied faithfully by this Court throughout the years: *State ex rel. Graney v. Sims*, 144 W.Va. 72, pts. 1 and 2 syl., 105 S.E.2d 886; *State ex rel. McMillion v. Stahl*, 141 W.Va. 233, 238-39, 89 S.E.2d 693, 698; *State ex rel. Dyer v. Sims*, 134 W.Va. 278, 287, 58 S.E.2d 766, 772; *City of Wheeling v. American Casualty Company*, 131 W.Va. 584, 594-95, 48 S.E.2d 404, 410; *Sypolt v. Shaffer*, 130 W.Va. 310, 315-16, 43 S.E.2d 235, 238-39; *Brewer v. City of Point Pleasant*, 114 W.Va. 572, pts. 1, 2 and 3 syl., 172 S.E. 717; *Boggess v. Johnson*, 113 W.Va. 193, 167 S.E. 82; *Brozka v. County Court of Brooke County*, 111 W.Va. 191, 160 S.E. 914; *State v. Scarbrough*, 108 W.Va. 9, 150 S.E. 219; *State v. Furr*, 101 W.Va. 178, pts. 1 and 2 syl., 132 S.E. 504; *Casto v. Upshur County High School Board*, 94 W.Va. 513, 520, 119 S.E. 470, 473; *State v. Haskins*, 92 W.Va. 632, pts. 2 and 3 syl., 115 S.E. 720; *State v. Mines*, 38 W.Va. 125, pts. 10 and 11 syl., 18 S.E. 470;

*Chesapeake & Ohio R. R. Co. v. Patton,* 9 W.Va. 648, 655-56.
The same general principles are adhered to and applied in
Virginia. *Kingan v. City of Richmond,* 198 Va. 820, 97 S.E.
2d 11.

The title to the statute here in question, Chapter 132, Acts
of the Legislature, Regular Session, 1961, after referring
specifically to various statutes which were repealed in order
to form the basis and background of the new statute, con-
cludes as follows: "* * *. and to *amend* said code by adding
thereto a new chapter, designated chapter five-a, all relating
to the administration and *financial affairs of the state and to
the department of finance and administration,* its powers and
duties." (Italics supplied.)

The portion of the statute involved in this case, Section 38
of Article 3, provides that it shall be unlawful "for any person
to jointly combine or collude or conspire in any way to affect
the market, or price, or supply of commodities and printing
obtained or to be obtained by the State under the provisions
of this article," which article deals with the Purchasing Divi-
sion of the Department of Finance and Administration.

It is difficult for me to conceive how provisions of a statute
could be more germane, related, auxiliary or incidental to "the
administration and financial affairs of the state and to the de-
partment of finance and administration," than Section 38
of Article 3 which, according to the language of the ma-
jority opinion, "might be termed the statute against 'rigging'
prices and supplies or market of goods being purchased by the
state."

The legislative act in question embraces approximately
thirty-seven pages in the bound volume of Acts of the Legis-
lature. It contains four separate articles and approximately
ninety-five separate sections, each designated by a number.
It is inconceivable to me that any act so long and compre-
hensive could contain a title sufficient to refer specifically to
each of the separate provisions. Hence we have the rule of
reason by which this Court and other courts throughout the
land have been guided in applying constitutional provisions

dealing with the titles of acts of legislatures. That universally and uniformly applied rule of reason, in my opinion, has been mercilessly, needlessly, and flagrantly disregarded in this case.

In this day in which we discuss and consider the desirability of reform in the operation of courts and in the administration of justice, it occurs to me that this very case presented an excellent starting place for this Court to make its contribution.

I would be quite willing and disposed to regard the prayer of this prohibition proceeding with greater leniency and indulgence if this case involved even remotely any substantial rights of the accused. We are not here concerned with the sufficiency of the charges made in the indictments, with the right of the accused to a fair trial or with any of the basic rights of the accused under the Bill of Rights of the Constitution of the United States or with any similar provisions of the Constitution of West Virginia.

The six felony indictments against the accused have been nullified by the Court in this case on a technical basis relating merely to the sufficiency of the title of the act of the legislature upon which the indictments are based. As a consequence, the accused, for all time, is deprived of the right to have a court adjudication of his innocence of the grave charges made against him in the six indictments.

The sufficiency of the title of the legislative act is not tested in any different manner or by any different standard merely because the act creates certain criminal offenses and provides penalties for violation thereof. Article VI, Section 30 refers to legislative acts relating to crimes, divorce, juvenile delinquency or anything else which might be a proper subject of a legislative act.

For reasons stated in this dissenting opinion, I would deny the writ of prohibition in this case.