309 S.E.2d 105

**STATE of West Virginia by W. VA. DEPT. OF MOTOR VEHICLES**

v.

**Thomas J. HILLYARD.**

**No. 15795.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

Chauncey H. Browning, Atty. Gen. and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for appellant.

Douglass & Douglass and Daniel B. Douglass, Parkersburg, for appellee.

MILLER, Justice:

The Department of Motor Vehicles (hereinafter DMV) contends that the Circuit Court of Wood County erred when it set aside the administrative revocation of appellee's license to operate a motor vehicle. The circuit court held that W.Va.Code, 17C–5–7 (1981), requires that an arresting officer give "a written statement advising him [the person under arrest] of the possible criminal and civil penalties. for such refusal," and therefore an oral statement or warning was not sufficient.

The provisions of W.Va.Code, 17C–5–7 (1981), refer to the administration of what is termed secondary chemical tests utilized to determine the amount of alcohol, controlled substances or drugs in a person's body that may impair his ability to operate a motor vehicle. As a result of the 1981 revisions to W.Va.Code, 17C–5A–1, et seq.,[1] a two-step procedure was authorized with regard to the handling of arrests and tests for purposes of detection of alcohol-impaired or drug-impaired drivers.

Under W.Va.Code, 17C–5–4 (1981), a person driving on public streets or highways is deemed to have given his consent "to a preliminary breath analysis and a secondary chemical test." W.Va.Code, 17C–5–5 (1981), provides that a preliminary breath analysis test may be administered when the officer has reason to believe that a person is driving under the influence of alcohol or drugs. The results of the preliminary test are to be "used solely for the purpose of guiding the officer in deciding whether an

---

1. 1981 W.Va. Acts 159 (Regular Session).

arrest should be made." W.Va.Code, 17C–5–5 (1981).[2]

After a person is arrested the secondary test comes into play as provided in W.Va. Code, 17C–5–4 (1981). This test is mandatory in the sense that if the person refuses to undergo one of the designated secondary tests, he is subject to having his operator's license revoked administratively.[3] *See Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978).

Of considerable importance to the disposition of this case is the disparity in language relating to the license revocation warning contained in W.Va.Code, 17C–5–4 (1981), and W.Va.Code, 17C–5–7 (1981). Under W.Va.Code, 17C–5–4 (1981), the key language is:

> "Any person to whom a preliminary breath test is administered who is then arrested *shall be told* that his refusal to submit to the secondary test ... will result in the suspension of his license to operate a motor vehicle in this State for a period of one year." (Emphasis added)

The applicable wording of W.Va.Code, 17C–5–7 (1981), is:

> "If any person under arrest as specified in section four [§ 17C–5–4] of this article refuses to submit to any secondary chemical test, the tests shall not be given: *Provided,* that prior to such refusal, the person is *given a written statement* advising him of the possible criminal and civil penalties for such refusal." (Emphasis added)

In the present case, it is not disputed that the arresting officer gave an oral warning to the effect that a refusal to take the designated secondary test would result in a suspension of his license for one year. This oral warning undoubtedly comported with the provisions of W.Va.Code, 17C–5–4 (1981). There is also no dispute that the officer did not give the written statement as provided in W.Va.Code, 17C–5–7 (1981).

We do not doubt that both of the provisions of W.Va.Code, 17C–5–4 & 7 (1981), are designed to accomplish the same end which is to provide the operator of a motor vehicle with an advance warning that if he refuses to undergo the designated secondary test, he will be subject to administrative revocation of his driver's license. Most courts that have had occasion to construe similar types of statutory warning requirements conclude that such a warning is essential before the DMV can revoke an operator's license for failing to take the designated test. *See, e.g., Garrison v. Dothard,* 366 So.2d 1129 (Ala.Civ.App.1979); *Thompson v. Dept. of Motor Vehicles,* 107 Cal.App.3d 354, 165 Cal.Rptr. 626 (1980); *Cantrell v. Weed,* 35 Colo.App. 180, 530 P.2d 986 (1974); *Adams v. Hardison,* 153 Ga.App. 152, 264 S.E.2d 693 (1980); *Belton v. State Dept. of Public Safety, Dr. Lic. Div.,* 277 So.2d 717 (La.App.1973); *State v.*

---

**2.** The full text of W.Va.Code, 17C–5–5 (1981), is:

> "When a police officer has reason to believe a person to have been driving a motor vehicle upon the public streets and highways of this State while under the influence of alcohol, controlled substances or drugs, the police officer may require such person to submit to a preliminary breath analysis for the purpose of determining such person's blood alcohol content. Such breath analysis must be administered as soon as possible after the police officer has a reasonable belief that the person has been driving while under the influence of alcohol, controlled substances or drugs. Any preliminary breath analysis required under this section must be administered with a device and in a manner approved by the department of health for that purpose. The results of a preliminary breath analysis shall be used solely for the purpose of guiding the officer in deciding whether an arrest should be made. When a driver is arrested following a prelimi-

nary breath analysis, the tests as hereinafter provided in this article shall be administered in accordance with the provisions thereof."

**3.** W.Va.Code, 17C–5–4 (1981), in material part, provides:

> "A secondary test of blood, breath or urine shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public streets or highways while under the influence of alcohol, controlled substances or drugs as prohibited by section two [§ 17C–5–2] of this article.... Any person to whom a preliminary breath test is administered who is then arrested shall be told that his refusal to submit to the secondary test finally designated as provided in this section, will result in the suspension of his license to operate a motor vehicle in this State for a period of one year."

*Granville,* 336 A.2d 861 (Me.1975); *State v. Bridenthal,* 32 Ohio App.2d 130, 288 N.E.2d 850 (1972). *See also* 3 R. Erwin, *Defense of Drunk Driving Cases* § 33.07 (3d ed. 1983).

Here we are not confronted with a total failure to warn, but an inconsistency in the manner of warning under the 1981 act between Section 4, which permits an oral warning, and Section 7, which speaks of a written statement. A further dichotomy occurs within Section 7 itself where in the latter portion the arresting officer is required to furnish an affidavit to the DMV. It is this affidavit which triggers the administrative license revocation procedures. One of the four requirements that must be stated in the affidavit under W.Va.Code, 17C–5–7 (1981), is that "such person was told that his license to operate a motor vehicle in this State would be suspended for a period of one year if he refused to submit to the secondary test finally designated in the manner provided in section four [§ 17C–5–4] of this article."

Thus, we have a situation where in two sections relating to the same subject matter, there is inconsistent language regarding the procedure that the arresting officer should use in warning a driver that his refusal to take the secondary chemical test will result in the loss of his operator's license administratively. It cannot be doubted that W.Va.Code, 17C–5–4 (1981), contains the more detailed warning provision since it requires the driver to be told that his refusal "will result in the suspension of his license ... for a period of one year." In contrast, the language of W.Va. Code, 17C–5–7 (1981), requires only that "the person is given a written statement advising him of the possible criminal and civil penalties."

■ Under accepted rules of statutory construction, where a statute contains several sections relating to the same subject, the section that is more specific with regard to the subject will control over the more general section. This rule was expressed in Syllabus Point 2 of *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970):

"A specific section of a statute controls over a general section of the statute."

*See also State v. Runnion,* 122 W.Va. 134, 7 S.E.2d 648 (1940).

■ In the present case, W.Va.Code, 17C–5–4 (1981), is the more specific section than W.Va.Code, 17C–5–7 (1981), in regard to the manner and content of the warning that must be given where the driver refuses to take one of the designated secondary tests. It requires that the driver be *told* that his refusal to take the secondary chemical test will result in the suspension of his driver's license for one year. Moreover, this is consistent with the officer's affidavit filed in compliance with W.Va. Code, 17C–5–7 (1981), wherein he is required to state that "such person was *told* that his license ... would be suspended for a period of one year if he refused to submit to the secondary test." (Emphasis added)

It should be noted that the 1981 provisions of W.Va.Code, 17C–5–4 & 7, have now been harmonized as a result of the 1983 amendment. W.Va.Code, 17C–5–4 (1983), now states that a driver should be provided with a "written statement advising him that his refusal to submit to the secondary chemical test ... will result in the revocation of his license."

For the foregoing reasons, we conclude that an oral warning as to the consequences of a refusal to take the secondary chemical test, given in compliance with W.Va.Code, 17C–5–4 (1981), is sufficient and that the failure to give the written notice referred to in W.Va.Code, 17C–5–7 (1981), does not warrant setting aside the administrative revocation. Consequently, we reverse the judgment of the circuit court.

Reversed.