IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 15-0302

_____

**FILED**

**April 21, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

WILLIAM LEONARD BEEGLE,
Petitioner

_____

Appeal from the Circuit Court of Marshall County
Honorable David Hummel, Jr.
Criminal Action No. 14-F-83

AFFIRMED

_____

Submitted: April 6, 2016
Filed: April 21, 2016

Dana F. Eddy, Esq.
Executive Director
Public Defender Services

Lori M. Waller, Esq.
Public Defender Services
Appellate Advocacy Division
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General

David A. Stackpole, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS

1.  Under the Sex Offender Registration Act, West Virginia Code §§ 15-12-1 to -10 (2014),  a sex offender may have multiple addresses and is required to register each one.

2.  A registered sex offender who resides for any extended period of time at his place of employment or job site is required to update the registry to reflect that his/her physical address includes his/her work-related address for purposes of complying with the disclosure requirements of the Sex Offender Registration Act, West Virginia Code §§ 15-12-1 to -10 (2014) .

LOUGHRY, Justice:

The petitioner, William Leonard Beegle, seeks relief from the March 5, 2015, sentencing order of the Circuit Court of Marshall County denying his motion for judgment of acquittal and imposing a one-to-five year sentence[1] for the offense of Failure to Register or Provide Notice of Changes included in this state's Sex Offender Registration Act (the "Act").[2] The petitioner challenges his conviction on grounds of insufficient evidence and he asserts that the statute under which he was convicted, West Virginia Code § 15-12-8(c) (2014), is unconstitutionally vague because the terms "address" and "residence" are not defined within the Act. Upon our careful review of this matter, we find no error and, accordingly, affirm.

## I. Factual and Procedural Background

The petitioner is a registered sex offender who is required by law to register pursuant to the Act for the remainder of his life. On March 23, 2014, the petitioner completed the "Notification of Sex Offender Responsibility and Registration Certification" form and submitted it to the West Virginia State Police in Marshall County. On that form, he indicated a change of address to 1117 Ninth Street, Moundsville, West Virginia.

[1]At the time of sentencing, this sentence was suspended and the petitioner was placed on a thirty-six month period of supervised probation.

[2]*See* W.Va. Code §§ 15-12-1 to -10 (2014).

1

On April 25, 2014, a civil process server with the Marshall County Sheriff's Office, Beth Shank, attempted to serve divorce papers on the petitioner between the hours of 8:00 a.m. and 4:00 p.m. at the Ninth Street address. She left a card hanging on the door, indicating she had been there with a number listed to call. Ms. Shank returned to the Ninth Street residence on April 29, 2014, and again attempted to serve the divorce papers on the petitioner. This time she visited between the hours of 11:00 a.m. and 7:00 p.m. Following these two unsuccessful physical attempts at contact, Ms. Shank tried to reach the petitioner by telephone, but did not get an answer. Thereafter, she revisited the house and spoke with the petitioner's stepfather, Richard Kennedy, who lived at the house. Because Mr. Kennedy declined to accept the divorce papers on the petitioner's behalf, Ms. Shank left another door hanger. The petitioner finally picked up the divorce papers on May 15, 2014.

During the time when Ms. Shank was trying to locate the petitioner, she spoke with West Virginia Trooper Jason Kocher at Magistrate Court and inquired if there was another address listed for the petitioner. Trooper Kocher checked the physical address listed in the registry and confirmed that the Ninth Street address was the petitioner's only physical address listing. For the next week to ten days, Trooper Kocher drove past the Ninth Street address on his way to work and on his way home, looking for the car that was listed in the petitioner's registry.[3] He never saw the car while driving by the house. He stopped at the

---

[3]The vehicle is actually registered to the petitioner's girlfriend/fiancee.

house twice over a period of six days, and each time the petitioner was not there. On each occasion when Trooper Kocher visited the Ninth Street address, he spoke with Mr. Kennedy, who confirmed that the petitioner was not physically present. Subsequent to these failed attempts to locate the petitioner at the Ninth Street address, Trooper Kocher obtained a warrant to arrest the petitioner for the offense of Failure to Register or Provide Notice of Registration Changes.[4]

On November 12, 2014, the petitioner was indicted on the charge of Failure to Register or Provide Notice of Registration Changes. At the conclusion of the evidence and the jury's deliberations following a one-day trial on February 6, 2015, the petitioner was found guilty.[5] After sentencing the petitioner to one-to-five years in the penitentiary for the conviction, the circuit court suspended the sentence and placed him on a thirty-six month period of probation. It is from the sentencing order that the petitioner now appeals.

## II. Standard of Review

---

[4]According to Trooper Kocher's testimony, it took two weeks after the issuance of the arrest warrant for the petitioner to be served with the document.

[5]During the jury's deliberations an *Allen* charge was given as the jury was initially deadlocked. Later that same evening, the jury reached a unanimous verdict.

The standard of review that is applied to challenges to criminal convictions based on a sufficiency of the evidence is set forth in syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

With regard to the petitioner's challenge to the constitutionality of West Virginia Code § 15-12-3, our review is *de novo*. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these two standards in mind, we proceed to examine the petitioner's assignments of error.

### III. Discussion

### A. Sufficiency of Evidence

The petitioner argues that the State failed to present sufficient evidence to support a finding of guilt beyond a reasonable doubt that he failed to register a change in the information he was required to submit to the sex offender registry. He acknowledges that any time a sex offender "has a change in any of the registration information as required" by the Act and "knowingly fails to register the change or changes, each failure to register each separate item of information changed shall constitute a separate offense under this section." W.Va. Code § 15-12-8(a). An individual such as the petitioner who is required to register for life, is guilty of a felony if he or she "knowingly provides materially false information or . . . refuses to provide accurate information . . . or knowingly fails to provide a change in any required information." W.Va. Code § 15-12-8(c). In this case, the State charged the petitioner with failing to "report a change of address upon moving from 1117 9th Street, Moundsville, Marshall County, West Virginia, to 1367 Cherry Hill Rd., Wheeling, Ohio County, West Virginia . . . in violation of West Virginia Code § 15-12-8(c)." The petitioner took the position that he was not required to submit a change in his registry information due to the fact that the state police already had this particular address listed as his place of employment.[6]

---

[6]The petitioner testified at trial that when he was not staying at the Ninth Street address it was because he was remaining at his place of employment to prevent equipment from being stolen from the job site.

5

Pursuant to the Act, a sex offender is required to "register in person at the West Virginia State Police detachment responsible for covering the county of his or her residence, and in doing so, provide or cooperate in providing, at a minimum," a litany of specified personal information. W.Va. Code § 15-12-2(d). In addition to tendering the registrant's full name, including all nicknames or aliases, his or her social security number, a full-face photograph, fingerprints and palm prints, internet accounts, telephone numbers, motor vehicle, trailer or motor home information, the offender is required to specify:

> The address where the registrant intends to reside or resides at the time of registration, the address of any habitable real property owned or leased by the registrant that he or she regularly visits: Provided, *That a post office box may not be provided in lieu of a physical residential address*, the name and address of the registrant's employer or place of occupation at the time of registration, the names and addresses of any anticipated future employers or places of occupation, the name and address of any school or training facility the registrant is attending at the time of registration and the names and addresses of any schools or training facilities the registrant expects to attend[.]

W.Va. Code § 15-12-2(d)(2) (emphasis supplied).

A sex offender has a specific obligation to report a change to "his or her residence, address, place of employment or occupation, motor vehicle, trailer or motor home information . . . or school or training facility" and a generalized duty to report "when any of the other information required by this article changes." W.Va. Code § 15-12-3. Under section three of the Act, the offender has ten business days in which to report a change to

6

his or her registry data. *Id.* Section three makes clear that a change of residence, place of employment or occupation or school or training facility from one county of this state to another county of this state similarly imposes a ten-business-day period for registering that new information with the respective state police detachments. Pursuant to procedural rules adopted to implement the Act's provisions, a sex offender is charged with the responsibility to advise the state police, at the detachment he or she last registered, ten days "prior to the actual change of address." 81 C.S.R. § 14-17.6.a. By regulation, the offender has ten business days after a move to "physically appear at the State Police detachment in the county(ies) where the new address is located" to comply with registry requirements.[7] 81 C.S.R. § 14-17.6.b.

When a sex offender such as the petitioner reports a change in his registry information to the state police, he completes a form entitled "Notification of Sex Offender Responsibility and Registration Certification" ("registry form"). That one-page document prominently sets forth the following mandatory bullet-pointed obligations:

- register within three (3) business days of release from incarceration or conviction;
- register in county in which I reside or detachment that covers county of residency;

---

[7]While the regulations denote apparent inconsistency as to the pre- and post-move notification periods, the form utilized to register changes demonstrates that these provisions were adopted with reference to an intra-county move.

7

- register any change in registration information, including but not limited to; physical and mailing address, vehicle, internet, phone, screen names, e-mail, etc. within ten (10) business days;
- register change of residency to another county in West Virginia, I must advise the detachment in person of new address ten (10) business days prior to the move and must register with the detachment in the new county within ten (10) business days;
- register change of residency to another state, I must advise the detachment of the new address ten (10) business days prior to the move and I must comply with the laws of that state;
- re-register at detachment within three (3) business days upon release from any incarceration;
- re-register at the detachment every year in the month of my birth.

To prove its case, the petitioner contends that the State had to prove: (1) there was a change of address; (2) this change was not reported within the statutory time limit; (3) the failure to report was knowing; and (4) the petitioner was required to register under the Act. According to the petitioner, there was no change in his address that correspondingly would have compelled him to submit an updated registry form. In an attempt to convince this Court that no "change" in his address took place, the petitioner maintains the state police had all the necessary information–specifically, his Cherry Hill Road work address. We find this argument specious at best.

Seeking to negate an obligation to apprise the state police as to the current status of his registry addresses, the petitioner contends that no reporting obligation arose by virtue of the fact that his work address had become the location where he was sleeping for extended periods of time. He essentially advocates there was no *new* address-related information to provide to the state police. This argument is easily defeated by the petitioner's acknowledgment that the "Sex Offender Registration Act requires sex offenders to register where they live and where they work so that law enforcement knows where offenders are spending their time." The fact that the petitioner had provided the state police with the Cherry Hill Road address as his employment-related address did not abrogate any duty on his part to notify the state police when he purportedly began staying overnight at his job site.[8] At the point when he began staying at the Cherry Hill Road address continuously for a week and a half at a time, his previously-provided Ninth Street address was no longer accurate for purposes of the registry or the Act's overarching objective of pinpointing the location of sex offenders.

In a futile attempt to denounce his reporting obligation, the petitioner looks to the regulatory definition of the term "address." After stating that "address" is defined as "[a]ny current physical address(es) including the mailing address," the petitioner asserts he continued to receive his mail and keep personal items at the Ninth Street address during the

---

[8]*See supra* note 6.

period at issue–March 23, 2014, to May 16, 2014. *See* 81 C.S.R. § 14-2.12. As a result, he contends the Ninth Street address continued to qualify as his address. What the petitioner overlooks in seeking to preserve the Ninth Street address as his *singular* physical address is the fact that the Act and the regulations clearly contemplate the existence of *multiple* addresses–work, school, residential, mailing–and there is a statutory obligation for a sex offender to provide each and every one of the specified addresses.

Once the petitioner stopped sleeping at the Ninth Street address, he had a duty to inform the state police where he could be located in the evenings. That he understood the scope of this obligation is clear because he regularly informed the state police as to the parking spot of his girlfriend's car in which they both were sleeping for a month and a half. In suggesting the State has effectively created a redundancy by requiring a re-reporting of his work address as his physical address, the petitioner denigrates the significance of alerting the state police to his locations during the daytime and the evening hours. And his retort that the state police could have found him if they were seeking him is belied by the record of this case. Moreover, the obligation is not on the state police to spend taxpayer dollars to locate him; the duty to keep the state police informed regarding his various activities and addresses is a responsibility that has been statutorily imposed *on him* as a result of his sex offender status. *See* W.Va. Code §§ 15-12-2, -3, -8.

10

The petitioner's efforts to convince us that no duty attached to notify the state police where he might be found during the evening hours is unavailing. At the very least, he had an obligation to inform the state police that the information previously tendered as his only physical address was no longer accurate. His continued receipt of mail at his stepfather's Ninth Street residence did not extinguish the statutory duty to provide accurate information concerning the locations where he regularly spent time. The intermittent nature regarding the living arrangements purportedly taking place at the Cherry Hill Road address[9] similarly did not quash the petitioner's obligation to keep the state police informed regarding his evening locations. Clearly, the residents of Ohio County had the right to know that a convicted sex offender was actually staying overnight in their county as opposed to living in Marshall County as indicated on the petitioner's registry form.

In a final attempt to shirk his statutory obligation to provide the state police with accurate information, the petitioner argues that the "State's evidence did not show Mr. Beegle spent time at an address not listed in his sex offender registration." Rather than acknowledge his failure to inform the state police he was not actually living at the Ninth Street address, the petitioner tried to benefit from the fact that his workplace address and his

---

[9]As the State correctly observes, there is no testimony in the record that a cot existed at the Cherry Hill Road work site–only the argument of counsel.

11

residential address were supposedly one and the same.[10] As the record clearly demonstrates, the petitioner was not living at the Ninth Street address he gave as his physical address. His stepfather testified that the petitioner spent one or two nights a month at the Ninth Street residence. While the petitioner sought to discredit the testimony of Mr. Kennedy based on his regular consumption of alcohol and advanced age, additional evidence was presented that tended to verify the stepfather's testimony regarding how infrequently the petitioner actually stayed overnight at the Ninth Street address. The testimony of the process server demonstrated there were significant periods of time during which the petitioner did not walk through the front door of the Ninth Street dwelling. The first time she visited the address he designated as his physical residence was on April 25, 2014. Four days later she left a second door hanger indicating her visit. Not until May 15, 2014, did the petitioner pick up the divorce papers Ms. Shank had been trying to serve upon him for several weeks. Each time Trooper Kocher stopped by the Ninth Street address, the petitioner was not there. And after an arrest warrant for Failing to Register or Provide Notice of Registration Changes was issued, it took another two weeks for the warrant to be served upon the petitioner.

The petitioner readily admits that "[u]nder the Act, a sex offender may have multiple addresses and is required to register each one." As the petitioner presented his case,

---

[10]While the petitioner testified he was spending evening hours at the Cherry Hill Road location for a week and a half at a time, we observe that testimony from his employer would have presented stronger evidence on this issue.

12

one of his addresses was the Cherry Hill Road location. If he was spending his evening hours at his work site for protracted periods of time, that location became one of the multiple addresses he was required to supply to the state police as a physical address.[11] *See* 81 C.S.R. § 14-2.12. To hide behind the dual-nature of that Cherry Hill Road location–as both a work place and a residence–is contrary to the letter and spirit of the Act. *See State v.* Myers, 227 W.Va. 453, 457, 711 S.E.2d 275, 279 (2011) (observing that "notification of the community is . . . an integral part of the Act's purpose"). Without a properly updated registry form–a form which correctly informed the state police that the Cherry Hill Road was a location where the petitioner was located overnight–the notification objectives of the Act were frustrated. *See* W.Va. Code § 15-12-1a (recognizing "that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons").

---

[11]We reject the petitioner's contention that a duty to register the Cherry Hill Road address as one of the addresses where he would be living during the evening did not arise because he never stayed on the job site for fifteen continuous nights. Under the legislative findings included in the procedural rules which govern the Act, it is provided that the *initial* duty to register as a sex offender in a particular county arises when an offender has been in that county for more than fifteen continuous days. *See* 81 C.S.R. § 14-5.1. Because the petitioner was already on the registry in Marshall County, he clearly had a duty to update the registry when he began spending his evenings on the job site.

The state police cannot be expected to surmise that a registered sex offender, when repeatedly not located at the only address designated as his physical address, has begun to use his work place location as a place of residency–albeit temporary. If this is the situation, then a registered sex offender has a duty to update his registry information to indicate that he/she is physically living at a job site. Absent complete and fully accurate address-related information, the sex offender registry fails to serve its intended purposes. *See id.* Accordingly, we hold that a registered sex offender who resides for any extended period of time at his place of employment or job site is required to update the registry to reflect that his/her physical address includes his/her work-related address for purposes of complying with the disclosure requirements of the Sex Offender Registration Act. *See* W.Va. Code § 15-12-8.

Our review of the record confirms the State's position that sufficient evidence was introduced at trial to demonstrate that the petitioner was not residing at the Ninth Street address. Despite his completion of the registry form indicating he was changing his address to the Ninth Street address, the jury heard Mr. Kennedy's testimony that the petitioner asked him "if he could get his mail there and put clothes upstairs in the bedroom." Mr. Kennedy further testified that the petitioner told him to tell the police that "he stayed there." According to Mr. Kennedy's testimony, the petitioner slept at the house "[o]nce in a while" about "once or twice a month" and picked up his mail there. Through the testimony of Ms.

14

Shank, the process server, it was established that the petitioner did not pick up divorce papers she was seeking to serve on him at the Ninth Street address for more than two weeks. In addition, Trooper Kocher visited the house twice over a six-day period and never found the petitioner at the designated Ninth Street address. Add to this testimony, the petitioner's own testimony that he stayed at his work location at 1367 Cherry Hill Road "[s]ometimes . . . for a week; sometimes . . . for a week and a half." Petitioner's fiancee, Tracy Jean Gray, confirmed this testimony that he stayed at the job site for a week and a half at a time. From this evidence, the jury could have decided that the petitioner was staying and residing at the Cherry Hill Road address and only going to the Ninth Street address periodically to pick up his mail and to spend one or two nights a month there. The petitioner's own testimony made clear that he only stayed at his stepfather's home on an intermittent basis.

From the forms the petitioner had been regularly completing over the twelve-year period he had been participating in the registry, the petitioner was fully apprised of his obligation to inform the state police within ten business days of a change in his *physical* address. From all of the physical and testimonial evidence adduced at trial, the jury had sufficient evidence from which to conclude that the petitioner's decision not to update the registry as to his current physical address was knowingly made. Viewing the evidence in a light favorable to the prosecution, as we are required to do, we have no difficulty

15

concluding that the jury's verdict in this case was supported by the evidence.

## B. Vagueness of Statute

The petitioner contends that the Act's provision that requires him to register changes to his registry information is unconstitutionally vague for failing to define the terms "residence" and "address." Due to confusion about what either of those terms meant within the context of the registry requirements, the petitioner states that he lacked notice of the wrongful conduct with which he was charged, and then convicted, with having committed. *See* Syl. Pt. 1, *State v. Flynn*, 158 W.Va. 111, 208 S.E.2d 538 (1974) ("A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication."); Syl. Pt.1, in part, *State ex rel. Myers v. Wood*, 154 W.Va. 431, 175 S.E.2d 637 (1970) ("[A] statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided . . . .").

The offense with which the petitioner was charged is written in terms of punishing a sex offender who "knowingly fails to provide a change in any required information." W.Va. Code § 15-12-8(c). The initial registration statute, as set forth above, requires that the offender provide the "address where the registrant intends to reside or

16

resides at the time of registration" and makes clear that a post office box will not suffice by insisting upon a "physical residential address." W.Va. Code § 15-12-2(d)(2). Turning to the provision that concerns changes to registry information, the statute separately references changes that affect "his or her residence, address, place of employment or occupation, motor vehicle, trailer or motor home information" and then in generalized fashion references "any of the other information required by this article." W.Va. Code § 15-12-3.

For obvious reasons, the Act is designed to obtain specific personal details about a sex offenders's activities to enable both the state police and the public to be apprised regarding his or her locality. Consequently, the Act makes clear that the provision of a post office box will not qualify as a "physical residential address." W.Va. Code § 15-12-2(d)(2). While the petitioner has sought to manufacture confusion as to these terms and the attendant requirements to register changes concerning alterations to an address, we do not find the statutes deficient in terms of specifying when a registry form must be updated. In an all-encompassing fashion, West Virginia Code § 15-12-3 mandates that an offender inform the state police when "any of the other information required by this article changes." The continuing duty to register changes is encompassed by the previously-quoted bullet on the registry form, which instructs offenders, to "*register any change in registration information, including but not limited to[:] physical and mailing address*, vehicle, internet, phone, screen names, e-mail, etc. within ten (10) business days." (emphasis supplied).

17

We are wholly unpersuaded by the petitioner's argument that the statute he was convicted of violating–West Virginia Code § 15-12-8(c)–or the statutes which set forth the initial registry reporting requirements and the obligation to amend registry filings upon a change in that information–West Virginia Code §§ 15-12-2,-3–are vague for failing to provide specific definitions of the terms "address" and "residence." Sections two and three of the Act are clearly written in a fashion that requires both a physical location where an offender is actually spending his non-working hours and the location, if different, where he/she receives his/her mail. Rather than being written in an "either or" fashion, the Act mandates that an offender specify *all* applicable addresses and residences. *See State v. Bailey*, No. 12-0234, 2013 WL 949527 (W.Va. March 12, 2013) (memorandum dec'n) (rejecting argument that Act was unconstitutionally vague for failing to define "residence" and reasoning that sex offender, who resided in two separate counties, was informed by Act of duty to register both addresses with respective state police detachments). The expansive scope of the registry requirements leaves little doubt that the mandated disclosure of information pertaining to a sex offender's locations is specific, rather than general, in nature.

We find no merit to the petitioner's argument that he lacked notice of what obligated him to file an updated registry form. Both the statutes and the form supplied by the state police make clear that he was required to file a corrected registry form whenever

18

there was *any change in the required registration information. See* W.Va. Code §§ 15-12-3, -8(c). His own testimony demonstrated he was not regularly staying at the Ninth Street address that he provided to the state police as his address. Given the unmistakably clear language of the statute, the petitioner had an ongoing duty to alert the state police as to his current physical address–the fact that his work address and his evening address were coextensive did not obviate this duty. Only by upholding the legislative mandate that requires up-to-date registry information will law enforcement, and the general public in turn, be informed and alerted regarding the localities of this state's registered sex offenders. And, as a direct consequence of an accurate registry, the Act's unimpeachable objective of enabling this state's citizenry to "protect themselves and their children" will be accomplished. W.Va. Code § 15-12-1a.

## IV.  Conclusion

Based on the foregoing, the sentencing order of the Circuit Court of Marshall County is affirmed.

Affirmed.