# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0066** (Ohio County 17-F-95)

**Vincent Portman,**
**Defendant Below, Petitioner**

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Vincent Portman, by counsel Matthew Brummond, appeals the Circuit Court of Ohio County's December 27, 2017, sentencing order following his conviction for failure to register as a sex offender, second offense. Respondent State of West Virginia, by counsel Holly M. Flanigan, filed a response. Petitioner filed a reply. On appeal, petitioner asserts that there was insufficient evidence to support his conviction and that the circuit court erred in refusing to instruct the jury on entrapment.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner, a sex offender who is required to update his information in the sex offender registry in April of each year, arrived at his local West Virginia State Police detachment to do so between April 26 and May 1 of 2017.[1] Petitioner spoke with Trooper Chad Heckler and informed him he was there to update his registry information. Trooper Heckler asked petitioner whether he was aware that he should make an appointment, and petitioner responded that he did not want to

---

[1] An individual who is required to register as a sex offender "shall register in person at the West Virginia State Police detachment responsible for covering the county of his or her residence, and in doing so, provide or cooperate in providing, at a minimum," certain statutorily enumerated information. W. Va. Code § 15-12-2(d). Every year, even if there has been no change in the information submitted to the registry, registrants must also "report, in the month of their birth, . . . to the State Police detachment responsible for covering their county of registration and must respond to all verification inquiries and informational requests." *Id.* § 15-12-10.

1

be set up for something. Trooper Heckler then responded, "[O]h, so the State Police are in the habit of setting people up?" Petitioner reportedly said, "[A]ctually, yeah."

Trooper Heckler conducted his part of the conversation from behind a window separating the lobby from the rest of the detachment. He noted that petitioner was irritated and agitated and that the conversation was not going well, and he accordingly walked out to the lobby to speak with petitioner face to face. Sergeant James Dean joined Trooper Heckler, and Sergeant Dean, who also observed petitioner's irritation, instructed petitioner to leave the detachment and return once his attitude had improved. Petitioner left the detachment as instructed, but he never returned to update his registry information.

On June 7, 2017, Trooper Eric McFarland received a call detailing a harassment complaint against petitioner. On that same day, Trooper McFarland called petitioner and asked him to come to the detachment to discuss the harassment complaint, and petitioner complied. After calling petitioner, Trooper McFarland learned that petitioner was in violation of the registry requirements. When petitioner reported to the detachment, Trooper McFarland discussed the harassment complaint with petitioner and then placed him under arrest for failing to update the sex offender registry as required.[2]

Petitioner was indicted on September 11, 2017, on one count of failure to register as a sex offender, second offense. He proceeded to trial on this charge on November 7, 2017, and the jury found him guilty. The circuit court sentenced petitioner to not less than ten nor more than twenty-five years of incarceration, which was memorialized in its December 27, 2017, sentencing order. It is from this order that petitioner appeals.

Petitioner first argues on appeal that there was insufficient evidence to support his conviction. Petitioner asserts that he appeared in April intent on updating his registration and that his demeanor was insufficiently egregious to indicate a refusal or inability to cooperate in providing the required information. Petitioner claims his behavior did not present an objective safety risk, nor was he violent or combative; therefore, the evidence was insufficient to establish that he failed to cooperate.

Regarding a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

---

[2]Petitioner was not arrested for any crime related to the alleged harassment.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a
> conviction takes on a heavy burden. An appellate court must review all the
> evidence, whether direct or circumstantial, in the light most favorable to the
> prosecution and must credit all inferences and credibility assessments that the jury
> might have drawn in favor of the prosecution. The evidence need not be
> inconsistent with every conclusion save that of guilt so long as the jury can find
> guilt beyond a reasonable doubt. Credibility determinations are for a jury and not
> an appellate court. Finally, a jury verdict should be set aside only when the record
> contains no evidence, regardless of how it is weighed, from which the jury could
> find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part.

It is undisputed that petitioner was required to register as a sex offender under West
Virginia Code § 15-12-2(d), and that he was required to update the registry every April under West
Virginia Code § 15-12-10. If a lifetime registrant, such as petitioner, "knowingly provides
materially false information or . . . refuses to provide accurate information when so required by
the terms of this article [governing the sex offender registry], or . . . knowingly fails to register or
knowingly fails to provide a change in any required information," he or she is guilty of a felony.
*Id.* § 15-12-8(c).

We find that petitioner has failed to meet the "heavy burden" imposed in sufficiency of the
evidence claims. Simply, the evidence established that petitioner failed to update the registry in
April of 2017. There was also evidence that petitioner knew of his registration requirements,
having signed forms confirming his knowledge of these requirements and having correctly updated
his sex offender registry information previously, including his annual verification in 2016.
Although petitioner was instructed to leave upon presenting to the detachment in an irritated and
agitated state, petitioner never returned to update the registry, as also instructed and as required by
law. We recently made clear that a registrant's "duty to keep the state police informed regarding
[the required registry information] is a responsibility that has been statutorily imposed *on him* as a
result of his sex offender status." *State v. Beegle*, 237 W. Va. 692, 698, 790 S.E.2d 528, 534 (2016)
(citing W. Va. Code §§ 15-12-2, -3, -8). Instead of fulfilling his statutory duty, petitioner only
returned to the detachment at an officer's direction in investigating a separate incident; he never
returned to update the registry. This is not a case where "the record contains no evidence . . . from
which the jury could find guilt beyond a reasonable doubt." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d
at 169, syl. pt. 3, in part. Accordingly, we find no merit in this assignment of error.

Petitioner also argues that he was entitled to a jury instruction on entrapment. Petitioner
submits that the officers' conduct in turning him away without registering him is sufficient to
warrant an instruction on entrapment because a rational fact-finder could believe that this conduct
induced petitioner to leave without registering. Petitioner claims that this failure to offer an
instruction on entrapment, despite competent evidence of inducement, intruded upon the jury's
fact-finding role.

We review a circuit court's refusal to offer a requested jury instruction under an abuse of discretion standard. Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). "A criminal defendant is entitled to an instruction on the theory of his or her defense if he or she has offered a basis in evidence for the instruction, and if the instruction has support in law." *Id.* at 285, 489 S.E.2d at 262 (citation omitted).

> Thus, an instruction offered by the defense should be given if the proposed instruction: (1) is substantively correct, (2) is not covered substantially in the charge actually delivered to the jury, and (3) involves an important issue in the trial so the trial court's failure to give the instruction seriously impairs the defendant's ability to effectively present a defense.

*Id.* (citation omitted). "If these prerequisites are met, the trial court abuses its discretion in refusing the instruction 'no matter how tenuous that defense may appear to the trial court.'" *Id.* (citation omitted). But "[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W. Va. 771, 180 S.E.2d 54 (1971).

Entrapment "occurs where the design or inspiration for the offense originates with law enforcement officers who procure its commission by an accused who would not have otherwise perpetrated it except for the instigation or inducement by the law enforcement officers." Syl. Pt. 2, in part, *State v. Houston*, 197 W. Va. 215, 475 S.E.2d 307 (1996).

We find no merit to petitioner's claim. At trial, Trooper Heckler testified that petitioner arrived at the detachment in an irritated and agitated state. Trooper Heckler explained that "for officer safety," it is "not a very smart procedure to follow through" with registration when an individual is in that state, particularly given the cramped quarters within which the registration takes place. The equipment needed to photograph and fingerprint the sex offenders is in a small room, and the process requires officers and sex offenders to be in close contact with one another. Trooper Heckler further explained that

> you're not going to put somebody in a little room with yourself, especially, you know, like I said, the example of me being there by myself and somebody is, you know, agitated or angry, whatever[.] [It] doesn't make sense for myself to be in harms [sic] way or potentially somebody else in harms [sic] way or something go worse.

Instead, in that situation Trooper Heckler testified that he would "de[-]escalate the situation and re-approach it a different time, different day."

Sergeant Dean also explained that, in asking petitioner to leave the detachment and return once his attitude changed, Sergeant Dean had

> to consider officer safety first and foremost. We are in the LiveScan room, a processing room, where if – if it were an annual registration, . . . we were – would have a still set of fingerprints, also take photographs, I would have to sit down with

4

the person and fill out and complete the form, 270 form. So someone who is angered or irritated, that's not an ideal situation, so – through my eyes that's the best way to handle that, would be to ask him to leave and come back when he's calm and we can do this without any further, you know, confrontation, I should say.

Although Sergeant Dean testified that petitioner's conduct rose to a level at which he could have been arrested, Sergeant Dean "cut him a break. The easiest way to handle this would be not to arrest him, but just to leave, come back when you're calm, so we can take care of this."

Sergeant Dean further testified that he never instructed petitioner not to return, nor did he intend for petitioner to commit the crime of failure to register when he instructed petitioner to return when calm. Trooper Heckler testified in like fashion:

> Q: Okay. And when you turned away someone in the past, is that an invitation for them not to come back?
>
> A: No, it's not.
>
> Q: An invitation for them not to fulfill their duties as a sex offender?
>
> A: No, it's not.[3]

Finally, various officers with petitioner's local State Police detachment testified that sex offenders are not limited to regular business hours in updating the registry. Sex offenders often, if not typically, update the registry after hours, and someone is always available at the detachment. The detachment at which petitioner updates the registry maintains a sign-in sheet. If an officer saw that an offender signed in on a particular date to register, but an officer was unable to update the registry for that offender due to, for instance, being called out to an urgent matter, and the offender subsequently returned slightly past the registration deadline, the officers afford "some leeway there as far as, hey, they did try to come in. You know what, they did, they signed in and you take it under discretion when you do register and they come in to register." In sum, there was no evidence that the officers instigated or induced petitioner's failure to register. To the contrary, registration may be accomplished at nearly any time of the day and petitioner was instructed to return once his attitude changed. Despite this availability and the officers' willingness to excuse minor instances of noncompliance, petitioner never returned. Therefore, we find no error in the circuit court's conclusion that there was no basis in the evidence to warrant an instruction that the officers in any way induced petitioner's failure to register.

For the foregoing reasons, we affirm the circuit court's December 27, 2017, sentencing order.

Affirmed.

---

[3]Trooper Heckler and Sergeant Dean also offered testimony on the various reasons a sex offender may be turned away from registration, which include illness, poor hygiene, drug and alcohol intoxication, and disorderly conduct.

**ISSUED:**  April 19, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison